UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

SHARIEFF MASSEY,

        Plaintiff,         Case No. 1:13-cv-1116

v.         Honorable Robert J. Jonker

HAMPTON WALKER et al.,

        Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Sharieff Massey presently is incarcerated with the Michigan Department of Corrections (MDOC) at the West Shoreline Correctional Facility (MTF). He sues the following officials within the MDOC and its prisons: Region III Director of the MDOC Psychological Services Unit (PSU) Hampton Walker; former MDOC Director Patricia Caruso; MDOC Senior Analyst for the Legislative Corrections Ombudsman Jessica Zimbelman; Region II Director of the PSU Jud Gildersleeve; MTF Chief Psychologist Kristen Austin; PSU/MTF therapist Iesha Collins; PSU/MTF employee James Boland; and PSU employee at the Egeler Reception and Guidance Center (RGC), psychological screener Jared Baker.

On October 11, 2007, the Kent County Circuit Court sentenced Plaintiff to two prison terms of one to fourteen years, after Petitioner pleaded guilty to two counts of uttering and publishing, MICH. COMP. LAWS § 750.249. Plaintiff's complaint concerns events that occurred during his incarceration on those offenses, between October 2007 and 2013.

Petitioner arrived at RGC on October 16, 2007. During his initial medical evaluation, Petitioner touched a nurse, and he was charged with a misconduct for sexual assault on a staff member. When he subsequently did not comply with handcuffing, he was charged with another assault on staff and with threatening behavior. Plaintiff denied the misconduct charges, but, following a hearing, he was found guilty on all charges on October 23, 2007. On November 1, 2007, while Plaintiff was in segregation on the misconduct charges, he was psychologically evaluated by Defendant Baker. Plaintiff told Baker that he had not touched the nurse at RGC. However, based on Plaintiff's institutional problems and conviction on the assault ticket at RGC, Baker recommended that Plaintiff take part in the Sexual Offender Program (SOP). Plaintiff alleges that

Baker should not have referred him to SOP and should have been aware that Plaintiff's claim of innocence on the misconduct charges would interfere with his participation in the SOP.

In the spring of 2008, Plaintiff was interviewed by the Michigan Parole Board while he was still in administrative segregation. Plaintiff could not participate in the SOP while he was in administrative segregation, and he was not released from administrative segregation until June 2008. In the interim, the Parole Board denied parole.

Plaintiff was transferred to a minimum-security prison in May of 2009, where he was housed with sex offenders. In June of 2009, Plaintiff was admitted to the SOP. Plaintiff allegedly felt intimidated, stigmatized and ostracized because of his housing placement with prisoners who had been convicted of sex offenses. He wrote a letter to the legislative ombudsman, who declined to investigate. Plaintiff also filed a grievance about his placement. During the pendency of the grievance, Plaintiff asked PSU and custody staff to move him to another unit. He also asked that Defendant Gildersleeve reevaluate the appropriateness of his referral to SOP. In August, 2009, Plaintiff asked the new SOP facilitator, Defendant Collins, to excuse him from SOP therapy because of the horror he was experiencing listening to stories of incest and sexual abuse shared by other prisoners. After discussion, Plaintiff remained in the program, though he filed a grievance about being required to participate. Collins issued an assignment, in which she asked SOP participants to provide a sexual autobiography and timeline, with the intent of identifying the steps and occurrences that led the participant to be the person he was at the time of the sexual offense. (Ex. K, docket #1-2, Page ID#49.) On October 26, 2009, Plaintiff submitted his response to Collins' assignment, which he has attached as Exhibits L and M to the complaint. (*See* Ex. L & M, docket #1-2, Page ID##50-56.) Two days later, Collins called Plaintiff into the office, where she yelled at him, told him that

he could not read the assignment to the group, and told Plaintiff not to report to SOP therapy again. She issued a progress report for October on November 13, 2009, indicating that Plaintiff had been involuntarily terminated from the program due to his continued lack of insight into his deviant thinking. (*See* Ex. R, Page ID##61-62.) On December 2, 2009, she issued a final report about Plaintiff's participation and termination, in which she indicated that he had been terminated because of his continued lack of insight into his deviant thinking, including his inappropriate sexual responses to the autobiographies of others and the graphic nature of his own sexual autobiography, which did not follow the instructions, but instead used the assignment to glorify Plaintiff's sexual encounters. (Ex. R, Page ID##63-64.)[1] Plaintiff filed a grievance before he received the final report, and Plaintiff's grievance was denied by Defendants Boland and Austin at Step I and Defendant Gildersleeve at Step II, prior to Plaintiff's receipt of the final report. Defendant Caruso's office denied the Step III grievance on January 18, 2010.

In April 2010, Plaintiff was again interviewed for parole, and the parole decision was again tentatively deferred pending a psychological assessment for the SOP. The assessment was conducted by Defendant Boland on April 27, 2010. Boland issued a report declining admission to the SOP on the grounds that Plaintiff did not accept responsibility for his past offenses, lacked insight into his conduct, had distorted thinking, and did not wish to participate.[2] Because Boland previously denied Plaintiff's grievance, Plaintiff believes that Boland was biased. Following

---

[1]The Court observes in passing that Collins' determination was well supported by the content of Plaintiff's assignment. (*See* Ex. L, M, Page ID##50-56.)

[2]Boland's report chronicled in more detail the sexual assault at RGC, which included inappropriate touching of the nurse, together with an inappropriate comment to the nurse while Plaintiff touched his own erection. It also chronicled Plaintiff's prior criminal conviction for indecent exposure and a prior misconduct in an earlier incarceration, when Plaintiff gave a sexually suggestive note to a prison librarian while he grabbed his crotch. (Ex. X, Page ID##74-75.)

Boland's report, Plaintiff was denied parole for a third time, with his next parole consideration deferred for 24 months.

Plaintiff was transferred to the Parnall Correctional Facility (SMT) in June of 2010, and then transferred again to the Cooper Street Correctional Facility (JCS) in September of 2010. In December of that year, Plaintiff wrote to the PSU, asking to be placed back in the SOP. He was referred to the central administration at the MDOC, but he heard nothing. He filed grievances. On January 25, 2011 and May 9, 2011, Plaintiff was notified that he was on the waiting list for SOP. (Ex. Z4 & Z6, Page ID##83, 85.) On May 11, 2011, Plaintiff received another response, indicating that he was not on the SOP list. On July 5, 2011, a PSU memo informed him that he no longer met the criteria for SOP, so he was not on the list. (Ex. BB, Page ID#90.) Plaintiff was again denied parole on August 9, 2011, and his next parole eligibility date was set for October 9, 2012. Plaintiff sought reconsideration, filed grievances and sent letters to the Legislative Corrections Ombudsman. On October 27, 2011, Defendant Zimbelman responded to Plaintiff's letter to the Ombudsman. (*See* Ex. GG, Page ID#99.)

Plaintiff alleges that Defendant Baker improperly recommended him to the SOP program in 2007, notwithstanding Plaintiff's denial of the allegation that he touched the nurse. Plaintiff also alleges that Walker violated his constitutional rights by failing to adequately investigate Baker's initial recommendation. In addition, Plaintiff alleges that Defendant Collins violated his rights under the First Amendment and the Equal Protection and Due Process Clauses of the Fourteenth Amendment by terminating him and that Defendants Boland, Austin, Gildersleeve and Caruso violated his rights under the First, Eighth and Fourteenth Amendments by denying his grievances. He contends that the termination and denials of grievances were motivated by an intent

to retaliate against Plaintiff both because he had filed grievances and because his mother was one of the plaintiffs in a lawsuit filed on behalf of female victims of prison-guard sexual assaults. Plaintiff supports this claim with an allegation that the first payment to the plaintiffs occurred near the time his SOP termination occurred.

Plaintiff seeks declaratory and injunctive relief, together with compensatory and punitive damages.

## Discussion

I. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the

pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Statute of Limitations

Most of Plaintiff's allegations are barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*,

98 F.3d at 220.³ However, the statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted. *See Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000).

Plaintiff has complained of conduct that occurred beginning in October of 2007. Plaintiff had reason to know of the "harms" done to him at the time the alleged actions occurred. Indeed, Plaintiff actually filed grievances and other complaints about most of the actions taken by Defendants over a period of six years, which required Plaintiff to attend the SOP. As a consequence, Plaintiff's allegations concerning conduct that occurred prior to Plaintiff's transfer to SMT in June of 2007 are time-barred.⁴ Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

---

³28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

⁴Plaintiff filed his complaint on or about October 7, 2013. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)). He was transferred to SMT in June of 2007. As provided in MICH. DEP'T OF CORR., Policy Directive 03.02.130 ¶ S, the total grievance process is expected to take not more than 120 days. Therefore, the grievance process for conduct occurring up to June 9, 2010 could have been completed by the date the complaint was filed. Plaintiff makes no allegation that any Defendant in this action committed harmful conduct between the time Boland reassessed him for admission to the SOP on April 27, 2010, and the time of his transfer to SMT in June of 2010.

As the Supreme Court has recognized, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 920-21 (2007). Plaintiff makes no allegations against Defendants Walker, Baker, Gildersleeve, Collins, Boland, Austin or Caruso for conduct occurring after June 2010. As a consequence, Plaintiff fails to state a claim against them.

### B. Due Process

The only Defendant alleged to have taken action within the limitations period is Defendant Zimbelman. Plaintiff complains that Zimbelman violated his right to due process when she rejected his complaint filed with the Legislative Corrections Ombudsman. He argues that the program should not be required for his parole and then be unavailable to him for participation.

"Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87.

Contrary to his assertions, Plaintiff does not have a federally cognizable liberty interest in participating in the SOP program. Federal courts consistently have found that prisoners have no constitutionally protected liberty interest in prison vocational, rehabilitation, and educational

programs based on the Fourteenth Amendment. *See, e.g., Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976) (Due Process Clause not implicated by prisoner classification and eligibility for rehabilitative programs, even where inmate suffers "grievous loss"); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (prisoners have no constitutional right to rehabilitation, education or jobs); *Canterino v. Wilson*, 869 F.2d 948, 952-54 (6th Cir. 1989) (no constitutional right to rehabilitation); *Newsom v. Norris*, 888 F.2d 371, 374 (6th Cir. 1989) (no constitutional right to prison employment); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987) ("[N]o prisoner has a constitutional right to a particular job or to any job"); *Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (participation in a rehabilitative program is a privilege that the Due Process Clause does not guarantee); *Rizzo v. Dawson*, 778 F.2d 527, 531 (9th Cir. 1985) (no constitutional right to rehabilitative services). Because Plaintiff has no liberty interest in the rehabilitative program, he was not entitled to a hearing before Zimbelman denied his complaint about the requirement that he should either be relieved of the requirement or permitted to complete SOP.

In addition, Plaintiff has no liberty interest in a hearing before or investigation by the Office of the Legislative Corrections Ombudsman. Indeed, state law expressly declares that no person has a right to be heard by the Ombudsman. *See* MICH. COMP. LAWS § 4.356(2). Because investigations and hearings by the Legislative Corrections Ombudsman are wholly discretionary, Plaintiff cannot demonstrate that Zimbelman's response imposed an atypical and significant hardship upon him. *Sandin*, 515 U.S. at 484.

### C. Active Unconstitutional Conduct

Even were Plaintiff's claims against Defendants Walker, Austin, Gildersleeve and Caruso not time-barred, they would nevertheless fail to state a claim. Plaintiffs only allegations

against these Defendants are that they either failed to supervise their subordinates and/or failed to adequately investigate or respond to his grievances. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Walker, Austin, Gildersleeve and Caruso engaged in any active unconstitutional behavior.

    II.   <u>Pending Motions</u>

    Plaintiff has filed a motion to appoint counsel (docket #3) and a motion for preliminary injunctive relief (docket #7). In light of the Court's disposition of the complaint, Plaintiff's motions will be denied as moot.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's motions to appoint counsel and for preliminary injunctive relief will be denied.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An Order and Judgment consistent with this Opinion will be entered.


Dated:     December 3, 2013                /s/ Robert J. Jonker
                                           ROBERT J. JONKER
                                           UNITED STATES DISTRICT JUDGE